# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, STATE OF ARIZONA, STATE OF CALIFORNIA, STATE OF COLORADO, STATE OF CONNECTICUT, STATE OF FLORIDA, STATE OF HAWAII, STATE OF IOWA, STATE OF MARYLAND, STATE OF MINNESOTA, STATE OF NEW YORK, STATE OF NORTH CAROLINA, STATE OF OHIO, COMMONWEALTH OF PENNSYLVANIA, STATE OF TEXAS, STATE OF UTAH, STATE OF VERMONT, AND STATE OF WISCONSIN, | Civil Action No. 5:26-cv-4060 |
| Plaintiffs, | |
| v. | |
| CAL-MAINE FOODS, INC., CENTRUM VALLEY HOLDINGS, LLC, VERSOVA HOLDINGS, LLC, VERSOVA MANAGEMENT COOPERATIVE, and HICKMAN'S EGG RANCH, INC., | |
| Defendants. | |

## <u>COMPLAINT</u>

Plaintiffs United States of America and the States of Arizona, California, Colorado, Connecticut, Florida, Hawaii, Iowa, Maryland, Minnesota, New York, North Carolina, Ohio, Pennsylvania, Texas, Utah, Vermont, and Wisconsin bring this civil antitrust action against Defendants Cal-Maine Foods, Inc.; Centrum Valley Holdings, LLC, Versova Holdings, LLC, and

Versova Management Cooperative; and Hickman's Egg Ranch, Inc. to obtain equitable relief to prevent and enjoin their violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

## I.  NATURE OF THE ACTION

1.  Between June 2022 and March 2025, Defendants agreed to submit bids designed to artificially inflate the daily price quotations for eggs published by Urner Barry Publications, Inc., a firm that reports market pricing information for eggs.  Since many of Defendants' contracts with retailers incorporate prices based on Urner Barry's price quotations, an increase in Urner Barry's price quotations leads to higher prices for eggs sold to retailers (and thus higher prices for eggs sold to consumers).

2.  Defendants' agreement to manipulate the Urner Barry price quotations violates Section 1 of the Sherman Act and should be enjoined.  Accordingly, Plaintiffs seek a decree requiring Defendants to cease these activities and adopt related compliance requirements.

## II.  DEFENDANTS AND CO-CONSPIRATORS

3.  Defendant Cal-Maine Foods, Inc., is a publicly held Delaware corporation with its principal place of business in Ridgeland, Mississippi.

4.  Defendant Centrum Valley Holdings, LLC is a Delaware company with its principal place of business in Sioux Center, Iowa.  Centrum wholly or partially owns several farms whose day-to-day operations are managed by Defendant Versova Management Cooperative, including Centrum Valley Farms, Oakdell Farms, and Willamette Egg Farms.

5.  Defendant Versova Holdings, LLC is a Delaware company with its principal place of business in Sioux Center, Iowa.  Versova Holdings wholly or partially owns Trillium Farms, whose day-to-day operations are managed by Defendant Versova Management Cooperative.

6.  Defendant Versova Management Cooperative is a cooperative association with its principal place of business in Sioux Center, Iowa.

7. This complaint refers to Centrum, Versova Holdings, and Versova Management Cooperative collectively as "Versova."

8. Defendant Hickman's Egg Ranch, Inc. is an Arizona corporation with its principal place of business in Buckeye, Arizona.

9. Co-Conspirator Cooperative A is a Delaware corporation with its principal place of business in Aurora, Colorado. For most of the relevant time period, Defendants, or farms that they managed, were members of Cooperative A.

## III. EGG INDUSTRY AND BACKGROUND

10. Eggs are produced by egg producers and sold to buyers including grocery stores, retailers, restaurants, and food-service distributors.[1] Several of the largest egg companies, including at least two Defendants, operated their egg business with a "net short" business model during the relevant period, meaning that they did not produce sufficient eggs to satisfy their existing customer demand. To meet the shortfall in their egg production, Defendants procured eggs from egg producers (or egg brokers) on electronic exchanges, such as the exchange operated by Egg Clearinghouse, Inc., or through direct purchases from other egg producers (or egg brokers). On ECI, egg companies can submit either "bids" to purchase eggs or "offers" to sell eggs. Executed transactions are often referred to as "trades."

11. Urner Barry is a price reporting agency that analyzes, aggregates, and anonymizes market information to publish daily price quotations that are widely used in the egg industry. Urner Barry publishes daily price quotations across regions (Midwest, Northeast, Southeast, Northwest, California, South Central) and egg sizes (*e.g.*, extra-large, large, medium), although its price

---

[1] The egg industry often uses the phrase "shell eggs" to refer to whole eggs sold unbroken in their shells. Unless otherwise stated, the term "eggs" in this Complaint refers to "shell eggs."

quotations are highly correlated across regions, meaning that a change that affects one region often affects other regions. Urner Barry's price quotations are based on, among other things, trades, bids, and offers on ECI in addition to self-reported trades not on ECI. In determining its price quotations, Urner Barry considers whether trades, bids, and offers are at prices that are "premium" (prices that suggest Urner Barry's price quotations are too low), "discount" (prices that suggest that Urner Barry's current price quotations are too high), or "supportive" (prices that suggest that Urner Barry's current price quotations are approximately correct). Accordingly, egg companies' bids, offers, and trades for eggs on ECI affect Urner Barry's price quotations.

12. Egg producers, including Defendants, often sell eggs to retailers including grocery stores and restaurants under contracts for which the price of eggs is based on the daily price quotations published by Urner Barry. Thus, Urner Barry's daily price quotations are an inseparable part of the price that many retailers, including grocery stores and restaurants, pay for eggs.

## IV.  DEFENDANTS' UNLAWFUL ACTIVITIES

13. Beginning in June 2022 and continuing through March 2025, Defendants conspired to artificially inflate Urner Barry's price quotations to increase the price of eggs sold nationwide. Defendants effectuated their conspiracy by, among other things: (i) agreeing to submit a large number of bids in order to influence Urner Barry's price quotations; (ii) agreeing that multiple Defendants would submit bids so that a diverse set of market participants were bidding; (iii) agreeing to submit a large number of bids in the hours leading up to the publication of Urner Barry's price quotations; (iv) agreeing to submit bids that were unlikely to lead to executed trades in order to increase Urner Barry's price quotations; and (v) agreeing to execute trades off of ECI (but still reported to Urner Barry) at premium prices in order to artificially inflate Urner Barry's price quotations. Defendants also lobbied Urner Barry to increase its price quotations, including by citing their bids and trades at premium prices as justifications for Urner Barry to increase its

price quotations. Representative examples of Defendants' conduct to manipulate Urner Barry's price quotations are discussed below.

**A.      Defendants Conspired to Artificially Inflate the Urner Barry Price Quotations.**

*a)      Hickman's and Cal-Maine Coordinate to "Hold" Market Prices.*

14.     In October 2022, Hickman's and Cal-Maine coordinated to "hold" prices—meaning that they worked together to stop prices from declining. On the morning of October 14, a Cal-Maine executive texted Hickman's CEO stating, "[w]e are bidding up. Let's hold it today." Later that day, Hickman's CEO called a now-former Cal-Maine executive over the phone. By the end of the day, Hickman's and Cal-Maine's bids on ECI accounted for over half of the bids submitted that day.

15.     Urner Barry kept its price quotations for white, large, shell eggs unchanged across all regions. One of the Cal-Maine executives then texted Hickman's CEO, "[n]o change," acknowledging that, as they had intended, Urner Barry kept its price quotations the same.

*b)      Defendants Coordinate to Bid "Early and Often."*

16.     On December 19, 2022, Cal-Maine, Versova, and Hickman's held a regularly scheduled weekly call in which they discussed Urner Barry's price quotations. That same day, Hickman's CEO emailed Defendants, "[n]eed to push the spread into the northwest…." A senior Versova executive replied a few hours later, stating, "[o]ur team will be bidding for additional loads again tomorrow." Hickman's CEO then responded, "[i]f we all bid in our respective areas for the 3-5 loads minimum we are short . . . the market reporters will have to address." Throughout the day, Hickman's CEO spoke on the phone with that Versova executive, as well as a now-former executive from Cal-Maine.

17.     On December 19, Urner Barry increased its price quotations for white, large, shell eggs across all regions.

18. Hickman's CEO repeated his request early the following morning, on December 20, emailing senior executives from Cal-Maine, Versova, and others, stating, "[p]lease consider posting strong bids, early and often. The market reporters don't get in for another hour, so it will be good for them to see diverse bidding upon logging on." (Urner Barry is more likely to increase its price quotations if it observes higher bids from a variety of market participants.) Hickman's CEO later emailed again, stating, "[h]urry[.] There are only 16 bids on ECI right now and 15 of them are ours [Hickman's bids]." Shortly after that email, all three Defendants collectively submitted dozens of bids on ECI, most of which were at premium prices. By contrast, all other market participants combined submitted fewer than six bids that morning. Following these emails, Hickman's CEO had several phone calls with an executive from Versova and a now-former executive from Cal-Maine.

19. On December 20, Urner Barry again increased its price quotations for white, large, shell eggs across all regions.

*c)*     *"We Need to Bid Like They Vote in Chicago, Early and Often."*

20. On December 21, Hickman's CEO again emailed his co-conspirators—including senior executives from Cal-Maine and Versova and the CEO of Cooperative A—noting that Urner Barry's market reporter was "trying to set the stage for [market prices] to retrace," meaning that, according to Hickman's CEO, Urner Barry was planning to lower its egg price quotations. Hickman's CEO reiterated that Defendants should "bid openly for eggs, especially mediums and eggs into the northwest."

21. That morning, consistent with Hickman's CEO's request, Cal-Maine, Versova, and Hickman's proceeded to collectively submit dozens of bids. By contrast, all other market participants combined submitted a small number of bids. On December 21, 2022, Urner Barry increased its price quotations for white, large, shell eggs across all regions.

22. On December 21, Urner Barry's report noted that the volume of bidding had declined from the previous day. This prompted the CEO of Cooperative A to repeat Hickman's earlier concern that Urner Barry might push for price declines, writing that Urner Barry was "prepared to pull the market down." He then joined Hickman's CEO in asking Defendants to submit bids designed to influence Urner Barry, writing, "[a]s a group we need to bid like they vote in Chicago, early and often." Hickman's CEO called a now-former Cal-Maine executive three times throughout the day. Hickman's CEO repeated the CEO of Cooperative A's instruction the next morning, emailing senior executives from Cal-Maine and Versova, the CEO of Cooperative A, and others, with the subject "bids," stating: "[t]here is only a 2 cent premium for NW [Northwest] large over SC [South Central] large" eggs. Hickman's CEO continued, "[b]id early and often today."

23. After receiving Hickman's CEO's directive to "[b]id early and often," on December 22, a senior Versova executive told another Versova executive to "light up the northwest bids please. .02 over." That executive agreed and then placed bids at a price that was two cents greater than Urner Barry's price quotation for the Northwest. Prospective sellers were required to call prior to accepting these bids. Then, when one of the Versova executives noted that the "NW bids are getting hit"—meaning that a seller was offering to sell the eggs to Versova to meet Versova's bid—the other Versova executive stated that he should delete the bids, suggesting that Versova did not need the eggs.

24. Consistent with Hickman's CEO's request that Defendants bid "[e]arly and often," Cal-Maine, Versova, and Hickman's collectively submitted dozens of bids on ECI on December 22. By contrast, all other market participants combined submitted five bids on ECI.

25. On December 22, Urner Barry increased its price quotations for white, large, shell eggs across all regions, including the Northwest region.

26. Defendants recognized that their efforts were successful. For example, after coordinating to place bids designed to affect Urner Barry's price quotations for the Northwest region, Hickman's CEO sent Defendants' executives an Urner Barry report stating that "[e]gg prices [were] hitting records," and added, "great job in the northwest today!"

        *d)*       *Defendants Execute Premium Trades So the Market Reporter Has Trades To "Hang Her Hat On."*

27. On August 7, 2023, a Cal-Maine executive sent a text message to a Versova executive, asking, "[a]ny more eggs?" and noting that Urner Barry's market reporter "needs premium trades to hang her hat on." The Cal-Maine executive then proposed to buy eggs at premium prices, and the two proceeded to negotiate over the delivery date of the trade. Cal-Maine and Versova executed three private trades (i.e., trades not executed on ECI or a similar platform) at premium prices, and Cal-Maine shared the purchase orders with Urner Barry.

28. After Urner Barry had kept its price quotations for white, large, shell eggs unchanged across all regions except California since May 26, it increased these quotations across all regions except California each day between August 9 and August 11. On August 9, the CEO of Cooperative A forwarded Urner Barry reports to Cal-Maine and wrote, "[f]inally!!!!," referring to Urner Barry's increases in its price quotations.

        *e)*       *Defendants' Continued Coordination.*

29. In the afternoon on December 3, 2024, Hickman's CEO spoke to executives from Cal-Maine and Versova over the phone. Early the next morning, on December 4, Cal-Maine's former CEO sent Hickman's CEO a text message stating, "[l]et it rip." After that, Defendants significantly changed their bidding behavior. Specifically, after December 4, Defendants

submitted more bids per day, and a greater percentage of their bids were at premium prices and unfilled.

30.     Defendants continued to lobby Urner Barry through the 2024 holiday season, asking for ever-higher price quotations and requesting that Urner Barry place less emphasis on transactions by non-Defendants that could have led to lower price quotations.

31.     Price quotations dropped significantly from their February 2025 peak after Defendants learned of the Department of Justice investigation and were instructed to preserve documents on March 5, 2025.

### f)     *Examples not Exhaustive*

32.     These examples are not exhaustive; Defendants discussed Urner Barry and ECI bidding in a variety of other emails, texts, chats, and phone calls during the relevant period.

## V.     VIOLATION OF SECTION 1 OF THE SHERMAN ACT, 15 U.S.C. § 1

33.     Plaintiffs repeat and reallege paragraphs 1 through 32 of this Complaint as if fully set forth herein.

34.     As described above, from June 2022 through March 2025, Defendants and their co-conspirators entered into and engaged in an agreement and conspiracy that had the direct, substantial, and foreseeable effect of artificially inflating Urner Barry's egg price quotations. This unreasonably and unlawfully restrained trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

35.     Plaintiffs are entitled to injunctive relief against Defendants to prevent and restrain these violations of Section 1 of the Sherman Act, 15 U.S.C. § 1.

## VI.     JURISDICTION AND VENUE

36.     Plaintiff United States of America brings this action under Section 4 of the Sherman Act, 15 U.S.C. § 4, to obtain equitable relief and other relief to prevent and restrain Defendants'

violations of Section 1 of the Sherman Act, 15 U.S.C § 1. The States of Arizona, California, Colorado, Connecticut, Florida, Hawaii, Iowa, Maryland, Minnesota, New York, North Carolina, Ohio, Pennsylvania, Texas, Utah, Vermont, and Wisconsin by and through their respective Attorneys General, bring this action pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, to enjoin Defendants from violating Section 1 of the Sherman Act, 15 U.S.C. § 1.

37. This Court has subject-matter jurisdiction under Section 4 of the Sherman Act, 15 U.S.C. § 4, and under 28 U.S.C. §§ 1331, 1337(a), and 1345.

38. This District is a proper venue under Section 5 of the Sherman Act, 15 U.S.C. § 5; Section 12 of the Clayton Act, 15 U.S.C. § 22; and 28 U.S.C. § 1391, because one or more Defendants transacts business or is found within this District, a substantial portion of the conduct giving rise to this claim occurred in this District, and a substantial portion of the affected interstate commerce was transacted in this District.

## VII. REQUEST FOR RELIEF

39. To remedy these illegal acts, Plaintiffs respectfully request that the Court:

   a. Adjudge and decree that Defendants entered into and engaged in a contract, combination, or conspiracy in restraint of trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

   b. Permanently enjoin Defendants from directly or indirectly communicating or discussing certain information relating to bidding, including competitors' bidding strategies and the prices, timing, and number of bids that competitors could or should submit;

   c. Permanently enjoin Defendants from directly or indirectly agreeing with each other or any competitor regarding the prices, timing, and number of bids;

d. Permanently enjoin Defendants from communicating with competitors regarding the submission of bids or execution of transactions that are intended to affect any benchmark publication or are not based on legitimate business needs;

e. Require Defendants to take such internal measures as are necessary to ensure compliance with any injunction; and

f. Award to Plaintiffs their costs of this action and order all relief that is just and proper.

Dated June 29, 2026.

Respectfully submitted,

**FOR PLAINTIFF UNITED STATES OF AMERICA:**

STANLEY E. WOODWARD, JR.
Associate Attorney General

OMEED A. ASSEFI
Senior Counsel

NICOLE A. SARRINE
Deputy Assistant Attorney General

MIRIAM R. VISHIO
Acting Director of Civil Enforcement

JARED T. BOND
Acting Deputy Director of Civil Enforcement

MARK H.M. SOSNOWSKY
Acting Deputy Director of Litigation

JOHN R. THORNBURGH II
Assistant Section Chief,
Chicago Office

LEIF OLSON
United States Attorney

By:   */s/ Brandon J. Gray*

BRANDON J. GRAY
Assistant United States Attorney
111 7th Avenue SE, Box 1
Cedar Rapids, IA 52401-2101
(319) 363-6333
Brandon.Gray2@usdoj.gov

*/s/ Jeffrey Vernon*
JEFFREY VERNON
Senior Litigation Counsel

ALVIN H. CHU
JENIGH J. GARRETT
FRANCIS H. SCHULZE

Attorneys
United States Department of Justice
Antitrust Division
450 Fifth Street N.W.,
Washington, DC 20530
(202) 367-6424
Jeffrey.Vernon@usdoj.gov

*/s/ Nicholas D. Niemiec*
NICHOLAS D. NIEMIEC
AVI GRUNFELD
ANTHONY E. MANEIRO
COLIN P. SNIDER

Attorneys
United States Department of Justice
Antitrust Division
209 South LaSalle Street, Suite 600
Chicago, IL 60604-1204
(202) 765-6809
Nicholas.Niemiec@usdoj.gov

**FOR PLAINTIFF STATE OF NEW YORK:**

LETITIA JAMES
Attorney General

CHRISTOPHER D'ANGELO
Chief Deputy Attorney General,
Economic Justice Division

ELINOR R. HOFFMANN
(*pro hac vice* forthcoming)
Chief, Antitrust Bureau
Elinor.Hoffmann@ag.ny.gov

AMY MCFARLANE
(*pro hac vice* forthcoming)
Deputy Chief, Antitrust Bureau
Amy.McFarlane@ag.ny.gov

*/s/ Isabella Pitt*
ISABELLA PITT
(*pro hac vice* forthcoming)
Assistant Attorney General, Antitrust Bureau
Isabella.Pitt@ag.ny.gov

JAMES YOON
(*pro hac vice forthcoming*)
Assistant Attorney General, Antitrust Bureau
James.Yoon@ag.ny.gov

New York State Office of the Attorney General
28 Liberty Street
New York, NY 10005
(212) 416-8436

*Attorneys for Plaintiff State of New York*

**FOR PLAINTIFF STATE OF ARIZONA:**

KRISTIN K. MAYES
Attorney General

*/s/ Sarah M. Pelton*
SARAH M. PELTON (*pro hac vice* forthcoming)

Office of the Arizona Attorney General
Consumer Protection & Advocacy Section
2005 N. Central Avenue
Phoenix, AZ 85004
Telephone: (602) 542-3725
Sarah.Pelton@azag.gov

*Attorney for Plaintiff State of Arizona*

**FOR PLAINTIFF STATE OF CALIFORNIA:**

ROB BONTA
Attorney General

*/s/ Michael Jorgenson*
MICHAEL JORGENSON (*Pro Hac Vice* Forthcoming)
Supervising Deputy Attorney General
PAUL CHANDER (*Pro Hac Vice* Forthcoming)
MATTHEW DELGADO (*Pro Hac Vice* Forthcoming)
Deputy Attorneys General

PAULA BLIZZARD (*Pro Hac Vice* Forthcoming)
Senior Assistant Attorney General

Office of the Attorney General
California Department of Justice
300 S. Spring St.
Los Angeles, California 90013
Telephone: (213) 269-6000
paul.chander@doj.ca.gov

*Attorneys for Plaintiff State of California*

**FOR PLAINTIFF STATE OF COLORADO:**

PHILIP J. WEISER
Attorney General

*/s/ Elizabeth W. Hereford*
ELIZABETH W. HEREFORD
Assistant Attorney General
*(pro hac vice forthcoming)*
BRYN A. WILLIAMS
First Assistant Attorney General
*(pro hac vice forthcoming)*

Colorado Department of Law
1300 Broadway, 9th Floor
Denver, CO 80203
Telephone: (720) 508-6000
Elizabeth.Hereford@coag.gov
Bryn.Williams@coag.gov

*Attorneys for Plaintiff State of Colorado*

**FOR PLAINTIFF STATE OF CONNECTICUT:**

WILLIAM TONG
Attorney General

NICOLE DEMERS
Chief, Antitrust Section
Deputy Associate Attorney General

<u>/s/ *Rose Levine*</u>
ROSE LEVINE
(*pro hac vice* forthcoming)
AMY TAYLOR
(*pro hac vice* forthcoming)
Assistant Attorneys General

Connecticut Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
Tel: (860) 808-5030
Fax: (860) 808-5391
Nicole.Demers@ct.gov
Rose.Levine@ct.gov
Amy.Taylor@ct.gov

*Attorneys for Plaintiff State of Connecticut*

**FOR PLAINTIFF STATE OF FLORIDA:**

JAMES UTHMEIER
Attorney General

JASON HILBORN
Deputy Attorney General for Civil Enforcement

LIZABETH BRADY
Director, Antitrust Division

*/s/ Colin G. Fraser*
COLIN G. FRASER
(*pro hac vice* forthcoming)
Senior Assistant Attorney General, Antitrust Division
colin.fraser@myfloridalegal.com

STEVEN J. ORBAN
(*pro hac vice* forthcoming)
Assistant Attorney General, Antitrust Division
steven.orban@myfloridalegal.com

Florida Office of the Attorney General
The Capitol, PL-01
Tallahassee, FL 32399-1050
(850) 414-3300

*Attorneys for Plaintiff State of Florida*

**FOR PLAINTIFF STATE OF HAWAII:**

ANNE E. LOPEZ
Attorney General

CHRISTOPHER J.I. LEONG
(*pro hac vice* forthcoming)
Supervising Deputy Attorney General
Commerce and Economic Development Division
christopher.ji.leong@hawaii.gov

*/s/ Rodney I. Kimura*
RODNEY I. KIMURA
(*pro hac vice* forthcoming)
Deputy Attorney General
rodney.i.kimura@hawaii.gov

Department of the Attorney General
425 Queen Street
Honolulu, Hawaii. 96813
(808) 586-1180

*Attorneys for Plaintiff State of Hawaii*

**FOR PLAINTIFF STATE OF IOWA:**

BRENNA BIRD
Attorney General

*/s/ Noah Goerlitz*
NOAH GOERLITZ
Assistant Attorney General

Office of the Iowa Attorney General
1305 E. Walnut St.
Des Moines, IA 50319
Tel: (515) 725-1018
noah.goerlitz@ag.iowa.gov

*Attorney for Plaintiff State of Iowa*

**FOR PLAINTIFF STATE OF MARYLAND:**

ANTHONY G. BROWN
Attorney General

*/s/ Schonette J. Walker*
SCHONETTE J. WALKER
(*pro hac vice* forthcoming)
Chief, Antitrust Division
swalker@oag.maryland.gov

JONATHAN DE JONG
(*pro hac vice* forthcoming)
Assistant Attorney General, Antitrust Division
jdejong@oag.maryland.gov

Maryland Office of the Attorney General
200 Saint Paul Place, 19th Floor
Baltimore, Maryland 21202
(410) 576-6470

*Attorneys for Plaintiff State of Maryland*

**FOR PLAINTIFF STATE OF MINNESOTA:**

KEITH ELLISON
Attorney General

*/s/ Jon M. Woodruff*
JON M. WOODRUFF
(*pro hac vice* forthcoming)
Assistant Attorney General
jon.woodruff@ag.state.mn.us

Office of the Minnesota Attorney General
445 Minnesota Street, Suite 600
Saint Paul, MN 55101
(651) 300-7425

*Attorneys for Plaintiff State of Minnesota*

**FOR PLAINTIFF STATE OF NORTH CAROLINA:**

JEFF JACKSON
Attorney General

KUNAL J. CHOKSI
Senior Deputy Attorney General

*/s/ Charles White*
CHARLES G. WHITE
(*pro hac vice* forthcoming)
Assistant Attorney General

North Carolina Department of Justice
P.O. Box 629
Raleigh, NC 27602
Tel: 919-716-6000
Facsimile: (919) 716-6050
Email: cwhite@ncdoj.gov


*Attorneys for Plaintiff State of North Carolina*

**FOR PLAINTIFF STATE OF OHIO:**

D. ANDREW WILSON
Attorney General

ERIK J. CLARK
Deputy Attorney General

BETH A. FINNERTY
Section Chief, Antitrust Section

EDWARD J. OLSZEWSKI
Assistant Section Chief, Antitrust Section

*/s/ Steven A. Oldham*
STEVEN A. OLDHAM
(*pro hac vice* forthcoming)
Principal Assistant Attorney General
Steven.Oldham@OhioAGO.gov

THOMAS W. ALLEN
(*pro hac vice* forthcoming)
Assistant Attorney General
Thomas.Allen@OhioAGO.gov

Office of the Ohio Attorney General
Antitrust Section
30 East Broad Street, 26th Floor
Columbus, OH 43215
(614) 466-4328

*Attorneys for the Plaintiff State of Ohio*

**FOR PLAINTIFF COMMONWEALTH OF PENNSYLVANIA:**

DAVID W. SUNDAY, JR.
Attorney General

SEAN KIRKPATRICK
Executive Deputy Attorney General
Public Protection Division

TRACY W. WERTZ
Chief Deputy Attorney General
Antitrust Section

*/s/ Jennifer J. Kirk*
JENNIFER J. KIRK
(*pro hac vice* forthcoming)
Senior Deputy Attorney General
Antitrust Section
jkirk@attorneygeneral.gov
(717) 497-5304

Commonwealth Of Pennsylvania Office of Attorney General
14th Floor, Strawberry Square
Harrisburg, PA 17120

*Attorneys for Plaintiff Commonwealth of Pennsylvania*

**FOR PLAINTIFF STATE OF TEXAS:**


KEN PAXTON
Attorney General

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

THOMAS D. YORK.
Chief, Antitrust Division

*/s/ Cole Pritchett*
COLE PRITCHETT
Assistant Attorney General
(*pro hac vice* forthcoming)
cole.pritchett@oag.texas.gov


Office of the Attorney General
Antitrust Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 475-4196


*Attorneys for Plaintiff State of Texas*

**FOR PLAINTIFF STATE OF UTAH:**

DEREK BROWN
Attorney General

DOUGLAS CRAPO
Deputy Attorney General,
Public Protection Department

*/s/ Marie W.L. Martin*
MARIE W.L. MARTIN
(*pro hac vice* forthcoming)
Division Director, Antitrust & Data Privacy Division
mwmartin@agutah.gov

Utah Office of the Attorney General
160 E, 300 S, 5th Floor
Salt Lake City, UT 84114-0830
(801) 366-0260

*Attorneys for Plaintiff State of Utah*

**FOR PLAINTIFF STATE OF VERMONT:**

CHARITY R. CLARK
Attorney General

*/s/Alexandra Spring*
Alexandra Spring
Assistant Attorney General
(*Pro hac vic*e forthcoming)
109 State Street
Montpelier, VT 05609
Alexandra.Spring@vermont.gov
(802) 828-5529

*Attorneys for Plaintiff State of Vermont*

**FOR PLAINTIFF STATE OF WISCONSIN:**

JOSHUA KAUL
Attorney General

*/s/ Caitlin M. Madden*
CAITLIN MADDEN
(*pro hac vice* forthcoming)
Assistant Attorney General
caitlin.madden@wisdoj.gov

Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
(608) 267-1311

*Attorney for Plaintiff State of Wisconsin*