# EXHIBIT C

UNITED STATES OF AMERICA, STATE OF ARIZONA, STATE OF CALIFORNIA, STATE OF COLORADO, STATE OF CONNECTICUT, STATE OF FLORIDA, STATE OF HAWAII, STATE OF IOWA, STATE OF MARYLAND, STATE OF MINNESOTA, STATE OF NEW YORK, STATE OF NORTH CAROLINA, STATE OF OHIO, COMMONWEALTH OF PENNSYLVANIA, STATE OF TEXAS, STATE OF UTAH, STATE OF VERMONT, AND STATE OF WISCONSIN,

    Plaintiffs,

v.

CAL-MAINE FOODS, INC., CENTRUM VALLEY HOLDINGS, LLC, VERSOVA HOLDINGS, LLC, VERSOVA MANAGEMENT COOPERATIVE, AND HICKMAN'S EGG RANCH, INC.,

    Defendants.

Civil Action No. 5:26-cv-04060

## PROPOSED FINAL JUDGMENT

WHEREAS, Plaintiffs, the United States of America and the States of Arizona, California, Colorado, Connecticut, Florida, Hawaii, Iowa, Maryland, Minnesota, New York, North Carolina, Ohio, Pennsylvania, Texas, Utah, Vermont, and Wisconsin, filed their Complaint on June 29, 2026;

AND WHEREAS, Plaintiffs and Defendant, Cal-Maine Foods, Inc. ("Cal-Maine") have consented to entry of this Final Judgment without the taking of testimony, without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party relating to any issue of fact or law;

AND WHEREAS, Cal-Maine agrees to be bound by certain obligations and to undertake certain actions to remedy the loss of competition alleged in the Complaint;

AND WHEREAS, Cal-Maine represents that the relief required by this Final Judgment can and will be made and that Cal-Maine will not later raise a claim of hardship or difficulty as grounds for asking the court to modify any provision of this Final Judgment;

NOW, THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED:

## I. JURISDICTION AND VENUE

The Court has jurisdiction over the subject matter of this action and over the parties to it. Venue for this action is proper in the United States District Court for the Northern District of Iowa. The Complaint states a claim upon which relief may be granted against Cal-Maine under Section 1 of the Sherman Act (15 U.S.C. § 1).

## II. DEFINITIONS

As used in this Final Judgment:

A.    "Cal-Maine" means Cal-Maine Foods, Inc., a Delaware corporation with headquarters in Ridgeland, Mississippi, its successors and assigns, and its subsidiaries, divisions, groups, and affiliates, and their directors, officers, managers, agents, and employees. "Cal-Maine" does not include Persons who are affiliated with Cal-Maine only because they are also members or owners of a Cal-Maine Commercial Association. For purposes of this definition,

"groups" refers to internal business units of Cal-Maine Foods, Inc., and its successors and subsidiaries, regardless of how those business units are formally organized.

B.    "Benchmark Publication" means any and all publications containing any price quotations, benchmarks, indices, or market updates for Eggs, including the daily quotations and undertone reports (e.g., the "mid-morning tone" and "egg situation" publications) published by Urner Barry (and also including the "COMTELL" market intelligence platform published by Urner Barry), the USDA Agricultural Marketing Service Egg Market News Reports, and any successor publications.

C.    "Bid," "Bids," or "Bidding" mean any offer to purchase Eggs, including any offer to purchase (1) Eggs on trading platforms or exchanges (including the exchange operated by ECI), or (2) through any other means of acquiring Eggs (including acquiring Eggs from brokers or through direct negotiations with producers of Eggs). "Bid," "Bids," and "Bidding" includes both executed and unexecuted offers as well as a single offer and multiple offers. For the avoidance of doubt, offers solely to sell Eggs are not "Bids," a "Bid," or "Bidding."

D.    "Cal-Maine Commercial Association" means any Commercial Association that Cal-Maine owns (in whole or in part) or is a member of.

E.    "Cal-Maine Commercial Association Meeting" means any regularly scheduled in-person, telephonic, or video-based meetings held by a Cal-Maine Commercial Association or one of its committees or working groups, including supply and demand and marketing meetings.

F.    "Commercial Associations" means any cooperatives, joint ventures, or other associations involved in the production, processing, preparing for market, handling, marketing, or sale of Eggs.

3

G.     "Competitor" means any Person, other than Cal-Maine, who produces or processes Eggs, or markets or sells Eggs to wholesalers, grocery stores, restaurants, or food-service distributors, including any such Person other than Cal-Maine who is a member or owner of any Cal-Maine Commercial Association, and any Commercial Association that is not a Cal-Maine Commercial Association. "Competitor" does not include any Cal-Maine Commercial Association.

H.     "Deleted Bid" means a Bid submitted on ECI that the bidder withdraws or deletes prior to the time it would normally expire under ECI's trading rules.

I.     "Document" means all written, printed, or electronically stored information, and any deleted but recoverable electronic files or any electronic file fragments of any kind in the possession, custody, or control of Cal-Maine, including information stored on social media accounts like X (formerly, Twitter) or Facebook, chats, instant messages, text messages, ephemeral or non-ephemeral messaging, and other methods of group and individual communication (e.g., Microsoft Teams, Slack), as well as documents contained in collaborative work environments and other document databases (e.g., Microsoft SharePoint sites, eRooms, document management systems such as iManage, intranets, web content management systems such as Drupal, wikis, and blogs). "Document" includes metadata, formulas, and other embedded, hidden, and bibliographic or historical data describing or relating to any document.

J.     "ECI" means Egg Clearinghouse, Inc. and the Egg spot market transaction platform that it operates.

K.     "Eggs" means whole shell eggs which are sold unbroken in their shell.

L.     "Including" means including, but not limited to.

4

M.    "Legitimate Business Needs" means the need of a producer of Eggs or a Commercial Association to acquire Eggs to meet current or anticipated demand. A Bid or Transaction is not based on Legitimate Business Needs when, at the time of a Bid or Transaction:

1. the producer or Commercial Association does not need to acquire the Eggs to meet current or anticipated demand,

2. any employee, manager, or director of the producer or Commercial Association, or any agent acting at the direction of the producer or Commercial Association, submits Bids or executes Transactions knowing that the prices are higher than necessary to acquire Eggs,

3. any employee, manager, or director of the producer or Commercial Association, or any agent acting at the direction of the producer or Commercial Association, submits Bids, or executes Transactions, knowing that the Bids or Transactions are for a greater number of Eggs than necessary to meet current or anticipated demand, or

4. any employee, manager, or director of the producer or Commercial Association, or any agent acting at the direction of the producer or Commercial Association, submits Bids without an intent to transact on the prices and terms offered (except that a mistakenly or inadvertently submitted Bid or price does not count as a Bid submitted without an intent to transact).

Whether a Bid is based on Legitimate Business Needs is evaluated at the time the Bid is submitted, and knowledge acquired after submission of a Bid will not change whether a Bid was based on Legitimate Business Needs at the time of submission. A Transaction that is executed as

5

a result of a Bid that is based on Legitimate Business Needs will be considered a Transaction based on a Legitimate Business Need regardless of any changes in market conditions between the time the Bid is submitted and the execution of the Transaction. As used herein, "knowing" or "knowledge" means the actual knowledge of the employee, manager, director, or agent. Knowledge acquired after a Transaction will not change whether a Transaction was based on Legitimate Business Needs at the time of the Transaction. In addition, paying or offering to pay a higher price in order to acquire Eggs on a particular delivery timeline; to acquire Eggs of a particular type, size, or quantity; or to increase the certainty of delivery will not, without more, mean that a Bid or Transaction is not based on a Legitimate Business Need.

N. "Person" means any natural person, corporate entity, partnership, association, joint venture, proprietorship, agency, board, authority, commission, office, trust, or other business or legal entity.

O. "Plaintiff States" means the States of Arizona, California, Colorado, Connecticut, Florida, Hawaii, Iowa, Maryland, Minnesota, New York, North Carolina, Ohio, Pennsylvania, Texas, Utah, Vermont, and Wisconsin.

P. "Senior Management" means Cal-Maine employees, agents, managers, officers, and directors, wherever located, who (1) are involved in or manage Bidding or the execution of Transactions, or (2) participate in, or supervise the individuals who participate in, Cal-Maine Commercial Associations.

Q. "Transaction" means any transaction to buy Eggs.

R. "Urner Barry" means Urner Barry Publications, Inc., a New Jersey corporation with a principal place of business in Toms River, New Jersey, Expana, and their present and former parent companies, Mintec Ltd. and AgriBriefing.

6

### III. APPLICABILITY

This Final Judgment applies to Cal-Maine and all other Persons in active concert or participation with Cal-Maine who receive actual notice of this Final Judgment.

### IV. PROHIBITED COMPETITOR COMMUNICATIONS AND AGREEMENTS

A. Cal-Maine must not, directly or indirectly, communicate, discuss, or negotiate with any Competitor regarding:

1. the specific Bidding strategies of Cal-Maine or any Competitor;

2. the prices of any Bids that Cal-Maine or any Competitor has made, will make, could make, or should make;

3. the timing of any specific Bids that Cal-Maine or any Competitor has made, will make, could make, or should make;

4. the number of Bids that Cal-Maine or any Competitor has submitted, will submit, could submit, or should submit; or

5. the information about Bids or Transactions, including the information immediately above in this Paragraph IV(A)(1)-(4), and any non-public information about Egg prices or Egg supply and demand, that Cal-Maine, any Competitor, or any Cal-Maine Commercial Association plans to report or communicate, should report or communicate, could report or communicate, has reported or communicated, or is considering reporting or communicating to any Benchmark Publication.

Nothing in this Paragraph IV.A prohibits Cal-Maine from (a) communicating with a Competitor (and, if necessary, a broker or brokers acting as an intermediary) to buy or sell Eggs, including regarding the price, number, or terms, if Cal-Maine is only discussing the price, number, or terms under which it will buy Eggs from or sell Eggs to that Competitor, solely with the Competitor

7

with whom Cal-Maine is negotiating to buy or sell Eggs (and, if applicable, the broker or brokers), (b) communicating with a Competitor (and, if necessary, a broker or brokers acting as an intermediary) regarding the price, number, or terms of an agreement to co-pack Eggs if that co-pack agreement is solely between Cal-Maine and that Competitor (and, if applicable, the broker or brokers), (c) making general statements in an earnings call or public filing about Cal-Maine's past Bids or Bidding strategies, as long as those statements do not include current or forward-looking information about the prices, timing, or number of Bids, or Bidding strategies, or (d) communicating with any Benchmark Publications about Cal-Maine's Bids and Transactions. For the avoidance of doubt, Cal-Maine's mere receipt of a Person's communication to Cal-Maine of the information described in Paragraph IV.A, if not requested by Cal-Maine, does not constitute a violation of this Paragraph.

B.      Cal-Maine must not, directly or indirectly, agree with any Competitor or Cal-Maine Commercial Association:

1.      on the number, pricing, or other terms of Bids submitted by Cal-Maine or any Competitor; or

2.      on the number, pricing, or other terms of Transactions executed between Cal-Maine and any third party or any Competitor and any third party.

C.      Nothing in this Section IV prohibits

1.  Cal-Maine from communicating, discussing, negotiating, or agreeing with a Competitor (or, if applicable, a Cal-Maine Commercial Association) to buy Eggs from or sell Eggs to that Competitor (or, if applicable, a Cal-Maine Commercial Association) if that acquisition or sale is solely between Cal-Maine and that Competitor (and past Bids,

8

Transactions, or sales of Eggs may be referenced, communicated, or discussed in the negotiation of such an acquisition or sale, solely with the Competitor or Cal-Maine Commercial Association with whom Cal-Maine is negotiating to buy or sell Eggs);

2. Cal-Maine from agreeing with a Person that is not a Competitor or Cal-Maine Commercial Association to buy Eggs from, or sell Eggs to, a Competitor, if those acquisitions or sales are based on Legitimate Business Needs;

3. Cal-Maine from communicating, discussing, negotiating, or agreeing with any Cal-Maine Commercial Association, its members, or any Person acting on that Cal-Maine Commercial Association's behalf about the Bids of that Cal-Maine Commercial Association—or, if Cal-Maine is submitting a Bid of the Cal-Maine Commercial Association, communicating, discussing, negotiating, or agreeing with that Cal-Maine Commercial Association or its members or owners about the Bids of that Cal-Maine Commercial Association—as long as Cal-Maine does not, directly or indirectly, communicate, discuss, negotiate, or agree with any Competitors that are members or owners of that Cal-Maine Commercial Association about the current or future Bids or Transactions of Cal-Maine or any of the Competitors;

4. Cal-Maine from communicating, discussing, negotiating, or agreeing with a Person who purchases substantially more Eggs than that Person produces about Bids or Transactions by Cal-Maine to acquire Eggs for

9

the benefit of that Person even if that Person otherwise meets the

definition of "Competitor"; or

5. conduct other than as enumerated in this Section IV.

## V.  OTHER PROHIBITED CONDUCT

A.    On a bi-annual (i.e., twice a year) basis beginning with Cal-Maine's second full

financial quarter following entry of the Stipulation and Order and for a period of five (5) years,

Cal-Maine must submit to the United States and the Plaintiff States, no later than thirty (30) days

after the close of the quarter:

1.    a certification made under penalty of perjury from Cal-Maine's General

Counsel that upon information and belief, based on a reasonably diligent inquiry, Cal-Maine did

not communicate with any Competitor or Cal-Maine Commercial Association regarding any

Bids or Transactions that Cal-Maine knows are not based on Legitimate Business Needs; and

2.    a written explanation made under penalty of perjury for each Deleted Bid

(except for Bids deleted because Cal-Maine acquired the necessary Eggs through other

Transactions). For each Cal-Maine Deleted Bid, this written explanation must include the date

and time of the Bid, any unique identifier applicable to the Bid, the dollar value of the Bid, when

the Bid was deleted, and an explanation of the reasons why Cal-Maine deleted the Bid.

B.    Cal-Maine must not communicate with any Competitor or Cal-Maine Commercial

Association regarding:

1.    Bids or Transactions that Cal-Maine knows are not based on Legitimate

Business Needs or

2.    Bids or Transactions that Cal-Maine knows are intended to affect any

Benchmark Publication.

10

However, the mere receipt by Cal-Maine of a Competitor or Cal-Maine Commercial

Association's communication regarding Bids or Transactions that are intended to affect a

Benchmark Publication or Bids or Transactions that are not based on Legitimate Business Needs,

if not requested by Cal-Maine, does not constitute a violation of this Paragraph V.B.

C.      Cal-Maine must not encourage, induce, influence, solicit, advise, agree with, or

assist any Competitor or Cal-Maine Commercial Association to:

1.      submit Bids, or execute Transactions, that are intended to affect any

Benchmark Publication; or

2.      submit Bids, or execute Transactions, that are not based on the Legitimate

Business Needs of Cal-Maine, the Competitor, or the Cal-Maine Commercial Association.

D.      For purposes of this Section V, a Bid or Transaction is "intended to affect any

Benchmark Publication" when at least one goal or purpose, known to Cal-Maine, is to affect any

Benchmark Publication. For the avoidance of doubt, mere knowledge, foreseeability, or

understanding that a Bid or Transaction could, would, or might affect a Benchmark publication

does not make a Bid or Transaction "intended to affect any Benchmark Publication."

E.      Nothing in this Section V prohibits conduct other than as enumerated in this

Section V.

## VI.     COMPLIANCE AND REPORTING OBLIGATIONS

A.      Within sixty (60) days of entry of the Stipulation and Order, Cal-Maine must

submit a written antitrust compliance policy to the United States and the Plaintiff States for

approval by the United States in its sole discretion that complies with the obligations set forth in

this Final Judgment. Cal-Maine must annually train all Senior Management on this written

policy.

B.       Within sixty (60) days of entry of the Stipulation and Order, Cal-Maine must designate an antitrust compliance officer. Cal-Maine must identify to the United States and the Plaintiff States the antitrust compliance officer's name, business address, telephone number, and email address. Within sixty (60) days of a vacancy in Cal-Maine's antitrust compliance officer position, Cal-Maine must appoint a replacement and must identify to the United States and the Plaintiff States the replacement's name, business address, telephone number, and email address. Cal-Maine's initial and replacement appointments of an antitrust compliance officer are subject to the approval of the United States in its sole discretion. Cal-Maine is responsible for all costs and expenses related to the antitrust compliance officer. The antitrust compliance officer will be responsible for:

1.       auditing on a bi-annual basis (i.e., twice per year) compliance with Sections IV and V;

2.       attending and monitoring (including through virtual, other electronic, or telephonic means) either personally or through reports from outside antitrust counsel any Cal-Maine Commercial Association Meeting in which the supply and demand or marketing of Eggs (including Bidding) is reasonably anticipated to be discussed;

3.       implementing and enforcing Cal-Maine's antitrust compliance policy and annual training required by Paragraph VI.A; and

4.       reporting any communication regarding Cal-Maine Commercial Association Meetings pursuant to Paragraph VI.D.

C.       On an annual basis beginning with Cal-Maine's second full financial quarter following entry of the Stipulation and Order, Cal-Maine must:

12

1.      submit to the United States and the Plaintiff States a certification from Cal-Maine's General Counsel attesting under penalty of perjury that (i) Cal-Maine has established and maintained the antitrust compliance policy and annual training required by Paragraph VI.A; and (ii) Cal-Maine has complied with the requirements in Sections IV and V; and

2.      submit to the United States and the Plaintiff States a certification from the antitrust compliance officer attesting under penalty of perjury that (i) Cal-Maine has taken reasonable steps to comply with Sections IV and V; (ii) the antitrust compliance officer has attended or monitored through reports from outside antitrust counsel all Cal-Maine Commercial Association Meetings attended by Cal-Maine in which the supply and demand or marketing of Eggs (including Bidding) is reasonably anticipated to be discussed; (iii) the antitrust compliance officer has reported all known communications pursuant to Paragraph VI.D; and (iv) the antitrust compliance officer has performed bi-annual audits to ensure compliance with Sections IV and V.

D.      Upon learning that Cal-Maine has engaged in communications or other conduct during a Cal-Maine Commercial Association Meeting prohibited by Section IV or Section V, the antitrust compliance officer designated pursuant to Paragraph VI.B must provide to the United States and the Plaintiff States the following information within thirty (30) days:

1.      the date, time, location, and a description of the communications or conduct, as well as the participants in the communications or conduct; and

2.      all Documents relating to the communications or conduct, including any agenda and meeting minutes.

No report pursuant to this Paragraph VI.D shall be construed as a *per se* admission of wrongdoing or violation of this Final Judgment by Cal-Maine. Notwithstanding the foregoing, the reporting obligation in this Paragraph VI.D does not extend to privileged communications.

E.     If Cal-Maine joins any Commercial Association between the date the Proposed Final Judgment is entered and the termination of the Final Judgment, Cal-Maine must submit to the United States and the Plaintiff States a detailed written description of the Commercial Association within thirty (30) calendar days after signing bylaws, a membership agreement, or a comparable Document, including a list of the members of that Commercial Association (as well as the name, business address, phone number, and email address for those members), the purpose and business of that Commercial Association, and copies of any governing agreements of the Commercial Association (including bylaws and membership agreements).

F.     Cal-Maine must provide a written copy of this Final Judgment to any current Cal-Maine Commercial Association, with a request that the Final Judgment be sent to all members of the Cal-Maine Commercial Association, within thirty (30) days from the entry of this Final Judgment. Cal-Maine must provide a written copy of this Final Judgment to any Commercial Association that Cal-Maine joins between the date the Proposed Final Judgment is entered and the termination of the Final Judgment, with a request that the Final Judgment be sent to all members of the Cal-Maine Commercial Association, within thirty (30) days after joining any such Commercial Association.

## VII.    COMPLIANCE INSPECTION

A.     For the purposes of determining or securing compliance with this Final Judgment or related orders such as the Stipulation and Order or determining whether this Final Judgment should be modified or vacated, upon written request of an authorized representative of the

Assistant Attorney General for the Antitrust Division or Plaintiff States and reasonable notice to Cal-Maine, Cal-Maine must permit, from time to time and subject to legally recognized privileges, authorized representatives, including agents retained by the United States or Plaintiff States:

      1.     to have access during Cal-Maine's business hours to inspect and copy, or at the option of the United States or Plaintiff States, to require Cal-Maine to provide electronic copies of all books, ledgers, accounts, records, data, and Documents wherever located, in the possession, custody, or control of Cal-Maine relating to any matters contained in this Final Judgment; and

      2.     to interview, either informally or on the record, Cal-Maine's officers, employees, or agents, wherever located, who may have their individual counsel present, relating to any matters contained in this Final Judgment. The interviews must be subject to the reasonable convenience of the interviewee and without restraint or interference by Cal-Maine.

      B.     Upon the written request of an authorized representative of the Assistant Attorney General for the Antitrust Division or Plaintiff States, Cal-Maine must submit written reports or respond to written interrogatories, under oath if requested, relating to any matters contained in this Final Judgment.

## VIII.  RELEASE

      Cal-Maine is hereby fully and finally discharged and released from the claims stated in the Complaint against Cal-Maine.

## IX.    PUBLIC DISCLOSURE

      A.     No information or Documents obtained pursuant to any provision in this Final Judgment may be divulged by the United States or the Plaintiff States to any Person other than

an authorized representative of the executive branch of the United States or the Plaintiff States, except in the course of legal proceedings to which the United States or a Plaintiff State is a party, including grand-jury proceedings, or as otherwise required by law.

B.      In the event of a request by a third party, pursuant to the Freedom of Information Act, 5 U.S.C. § 552, or similar state disclosure laws, for disclosure of information obtained pursuant to any provision of this Final Judgment, Plaintiffs will act in accordance with that statute and the Department of Justice regulations at 28 C.F.R. part 16, including the provision on confidential commercial information, at 28 C.F.R. § 16.7, or the state disclosure laws as applicable. Cal-Maine, when submitting information to the Antitrust Division, should designate the confidential commercial information portions of all applicable Documents and information under 28 C.F.R. § 16.7. Designations of confidentiality expire ten (10) years after submission, "unless the submitter requests and provides justification for a longer designation period." *See* 28 C.F.R. § 16.7(b).

C.      If at the time that Cal-Maine furnishes information or Documents to the United States or the Plaintiff States pursuant to any provision of this Final Judgment, Cal-Maine represents and identifies in writing information or Documents for which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and Cal-Maine marks each pertinent page of such material "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," the United States or the Plaintiff States must give Cal-Maine ten (10) calendar days' notice before divulging the material in any legal proceeding (other than a grand jury proceeding), unless subject to a court order requiring disclosure within fewer than ten (10) calendar days, in which case the United States or the Plaintiff States will provide notice as quickly as practicable.

## X.      RETENTION OF JURISDICTION

The Court retains jurisdiction to enable any party to this Final Judgment to apply to the Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XI.      ENFORCEMENT OF FINAL JUDGMENT

A.      The United States, or any Plaintiff State with respect to actions by Defendant impacting Egg sales in its State, retains and reserves all rights to enforce the provisions of this Final Judgment, including the right to seek an order of contempt from the Court. In a civil contempt action, a motion to show cause, or a similar action brought by the United States or an affected Plaintiff State relating to an alleged violation of this Final Judgment, the United States or the affected Plaintiff State may establish a violation of this Final Judgment and the appropriateness of a remedy therefor by a preponderance of the evidence, and Cal-Maine waives any argument that a different standard of proof should apply.

B.      Cal-Maine may be held in contempt of, and the Court may enforce, any provision of this Final Judgment that, as interpreted by the Court applying ordinary tools of interpretation, is stated specifically and in reasonable detail, whether or not it is clear and unambiguous on its face. In any such interpretation, the terms of this Final Judgment should not be construed against either party as the drafter.

C.      In an enforcement proceeding in which the Court finds that Cal-Maine has violated this Final Judgment, the United States may apply to the Court for an extension of this Final Judgment, together with other relief that may be appropriate. In connection with a successful effort by the United States or any affected Plaintiff State to enforce this Final

17

Judgment against Cal-Maine, whether litigated or resolved before litigation, Cal-Maine must reimburse the United States or any affected Plaintiff State for the fees and expenses of its attorneys, as well as all other costs including experts' fees, incurred in connection with that effort to enforce this Final Judgment, including in the investigation of the potential violation.

D.      For a period of four (4) years following the expiration of this Final Judgment, if the United States has evidence that Cal-Maine violated this Final Judgment before it expired, the United States may file an action against Cal-Maine in this Court requesting that the Court order: (1) Cal-Maine to comply with the terms of this Final Judgment for an additional term of at least four (4) years following the filing of the enforcement action; (2) all appropriate contempt remedies; (3) additional relief needed to ensure Cal-Maine complies with the terms of this Final Judgment; and (4) fees or expenses as called for by this Section XI.

## XII.   EXPIRATION OF FINAL JUDGMENT

Unless the Court grants an extension, this Final Judgment will expire five (5) years from the date of its entry, except that after four (4) years from the date of its entry, this Final Judgment may be terminated upon motion by the United States to the Court and notice by the United States to Plaintiff States and Cal-Maine that continuation of this Final Judgment is no longer necessary or in the public interest. All requirements, including all notice, certification, and reporting requirements, will terminate automatically upon the expiration of this Final Judgment.

## XIII.   RESERVATION OF RIGHTS

This Final Judgment terminates only the claims stated in the Complaint against Cal-Maine and does not affect any other charges or claims the United States or Plaintiff States may file.

## XIV. PUBLIC INTEREST DETERMINATION

Entry of this Final Judgment is in the public interest. The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including by making available to the public copies of this Final Judgment and the Competitive Impact Statement, public comments thereon, and any response to comments by the United States. Based upon the record before the Court, which includes the Competitive Impact Statement and, if applicable, any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.