**REDACTED**

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

IN RE SHELL EGGS ANTITRUST LITIGATION

This Document Relates to:
ALL ACTIONS

Case No.: 3:26-md-03175-jdp
MDL No. 3175

Chief Judge James D. Peterson
Magistrate Judge Anita M. Boor

# DEFENDANT OPAL FOODS LLC'S SUPPLEMENTAL INDIVIDUAL BRIEF IN SUPPORT OF CERTAIN DEFENDANTS' MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINTS

Plaintiffs allege that more than twenty defendants, including Opal Foods LLC ("Opal"), conspired to engage in an impossibly complex series of coordinated efforts, over more than three years, to suppress supply and inflate egg prices through the use of a third party egg pricing index.[1] Just as Plaintiffs' group pleading against all Defendants contorts lawful and unilateral conduct to try to support an unworkable theory of a vast price-fixing conspiracy, so do their Opal-specific allegations. Applying Plaintiffs' flawed logic, the only way Opal could have avoided being named would be if it had not subscribed to Urner Barry, rejected customer demands to use Urner Barry index prices as reference prices, [redacted], and never attended industry conferences. Because Plaintiffs' group pleading and the Opal-specific

[1] Plaintiffs filed their initial follow-on class action complaints on the heels of a rumored U.S. Department of Justice Antitrust Division ("DOJ") investigation into egg pricing. Despite naming a multitude of egg producers in their complaints, Plaintiffs admit that DOJ's "lengthy" investigation ultimately resulted in a settlement with only three egg producers. *See* DPP ¶ 338.

For convenience, cites to Plaintiffs' factual allegations are to the numbered paragraphs of the Direct Purchasers' Consolidated Amended Complaint ("DPP"), ECF No. 313. These mirror the facts alleged in the Consumer Indirect Purchaser and the Commercial Indirect Purchaser Consolidated Amended Complaints, ECF Nos. 309 and 311. Capitalized words and phrases have the same meaning as set forth in the DPP.

**REDACTED**

allegations describe nothing more than unilateral, ordinary course conduct consistent with Opal's own economic interest, Plaintiffs' conspiracy theory fails under Section 1 of the Sherman Act, and the claims against Opal should be dismissed in their entirety with prejudice.

## I. OPAL-SPECIFIC FACTS

Opal is a Missouri-based egg producer of Commodity Shell Eggs. DPP ¶¶ 91, 95. During part of the relevant time period, Opal's total flock size was 7 million birds. *Id.* ¶¶ 97-98. After March 2024, Opal's flock increased by 5 million birds as a result of acquiring egg farms operated by Sparboe. *Id.* Plaintiffs' acknowledgment that Opal expanded its flock size during the relevant time period undercuts any allegations that Opal conspired to reduce supply.

Plaintiffs' Opal-specific allegations fall into two categories: (1) instances in which [redacted]

| | |
|---|---|
| [redacted] | [redacted] DPP ¶ 280. |
| [redacted] | [redacted] DPP ¶ 280. |
| [redacted] | [redacted] DPP ¶ 255. |
| [redacted] | [redacted] DPP ¶ 255. |
| [redacted] | [redacted] DPP ¶ 233. |
| [redacted] | [redacted] DPP ¶ 233. |
| [redacted] | [redacted] DPP ¶ 234. |
| [redacted] | [redacted] DPP ¶ 235. |

**REDACTED**

[redacted] DPP ¶¶ 234-35. [redacted] DPP ¶ 192 [redacted] By Plaintiffs' own account, however, [redacted] *See* DPP ¶ 204.

Plaintiffs' conclusory group pleading asserts that Opal subscribed to Urner Barry, DPP ¶ 99, tied its Commodity Shell Egg prices to Urner Barry index prices, *id.*, conspired with the other egg producers to restrict supply, *e.g.*, DPP ¶¶ 282-301, and attended egg industry events, including [redacted]. DPP ¶ 357. The brief filed in support of Certain Defendants' Motion to Dismiss (ECF No. 341) comprehensively addresses why these allegations against fail to support Plaintiffs' claims, and those arguments will not be repeated here.

## II. ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), Plaintiffs must provide sufficient factual allegations, "accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing the plausibility of a Sherman Act claim, courts do not accept "legal conclusion[s]." *Twombly*, 550 U.S. at 555 (quotation marks omitted). Rather, Plaintiffs must offer nonconclusory factual allegations that "raise a right to relief above the speculative level." *Id.*; *Mountain Crest SRL, LLC v. Anheuser-Busch InBev SA/NV*, 456 F. Supp. 3d 1059, 1072 (W.D.

**REDACTED**

Wis. 2020) (stating "[c]ourts apply the plausibility requirement with added rigor in the context of complex cases").

**A. [redacted] Do Not Support an Inference That Opal Conspired to Manipulate Index Prices.**

Plaintiffs' allegations do not plausibly establish that Opal joined a sweeping conspiracy to "pressure" Urner Barry to raise index prices and maintain those prices at "artificially high" levels. [redacted] *See, e.g.*, DPP ¶ 183. [redacted] *See Marion Diagnostic Ctr., LLC v. Becton Dickinson & Co.*, 29 F.4th 337, 343 n.6 (7th Cir. 2022) ("Independent action does not violate Section 1 of the Sherman Act.").

Plaintiffs also fail to explain how [redacted] And despite having access to Urner Barry's internal records, Plaintiffs cite nothing from which to infer that [redacted] Indeed, the Complaints establish that, as a rule, [redacted]. DPP ¶¶ 266, 275.

**B. [redacted] Do Not Support an Inference That Opal Conspired to Manipulate Index Prices.**

[redacted] do not plausibly support the existence of a conspiracy. To plead an indirect agreement, Plaintiffs must plausibly allege "parallel [conduct]" and "something more." *Twombly*, 550 U.S. at 560. Both

**REDACTED**

components are critical and both are absent here. [redacted] and a decision by Urner Barry to increase or maintain its index prices in any relevant geographic region or for any relevant type of egg.

Furthermore, "when the allegations, taken as true, could just as easily reflect innocent conduct or rational self-interest," the conduct cannot support an antitrust conspiracy. *See Marion Diagnostic*, 29 F.4th at 350-51. Critically, [redacted]. *See Twombly*, 550 U.S. at 553 (citation omitted); *see Marion Diagnostic*, 29 F.4th at 350-51. Simply put, Plaintiffs' allegations that [redacted] constitute parallel conduct or a plus factor fall short of taking Plaintiffs' claims of conspiracy across the line from "conceivable to plausible." *Twombly*, 550 U.S. at 570.

## III. CONCLUSION

Opal's subscription to Urner Barry, use of the Urner Barry index as a reference price, [redacted] are all indicative of unilateral, lawful conduct and do not plausibly evidence the years-long, complex and a highly coordinated price-fixing conspiracy alleged in this case. For all the reasons set forth herein and in the brief submitted in support of Certain Defendants' Motion to Dismiss, the Court should dismiss all claims against Opal in their entirety with prejudice.

**REDACTED**

Dated this 10th day of November, 2026.

Respectfully submitted,

/s/*Wendy Arends*

Wendy Arends
State Bar No.: 1090021
**HUSCH BLACKWELL LLP**
33 East Main Street, Suite 300
Madison, WI 53703
Phone: (608) 258-7382
Fax: (608) 258-7138
wendy.arends@huschblackwell.com

Alicia L. Downey
Admitted pro hac vice
**DOWNEY LAW LLC**
155 Federal Street, Suite 300
Boston, MA 02110
Phone: (617) 444-9811
alicia@downeylawllc.com

*Outside Counsel for Opal Foods LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the above date, a true and correct copy of the foregoing document, with redactions for information designated as confidential, was filed with the Court via the CM/ECF system and sent to all registered participants as identified on the Notice of Electronic Filing (NEF), while a true and correct copy of the sealed unredacted version was served upon counsel of record via email.

/s/*Alicia L. Downey*