**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| In re Shell Eggs Antitrust Litigation<br>This Document Relates To:<br>All ACTIONS | No. 3:26-md-03175-jdp<br>MDL No. 3175 |

**DEFENDANT EGG CLEARINGHOUSE, INC.'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

## INTRODUCTION

ECI does not belong in this case. Plaintiffs seek to hold ECI liable for conduct they attribute to egg producers, simply because those producers used ECI's marketplace. Plaintiffs allege that egg producers conspired to fix shell egg prices by restraining supply, coordinating bids, and manipulating the Urner Barry index. ECI did none of those things. Unlike almost every other Defendant, ECI does not produce or sell eggs. As Plaintiffs plead, ECI is a membership-based spot market where egg producers ***and buyers*** trade eggs.

Plaintiffs can therefore reach ECI only as an intermediary. That requires allegations that ECI knowingly joined and participated in the alleged conspiracy. The Complaints plead none. They never allege that ECI placed or coordinated a bid, communicated with any producer about the scheme, knew of any illicit plan, or changed its marketplace when the conspiracy supposedly began. Plaintiffs seek to transform producers' use of ECI's marketplace into proof that ECI joined their agreement. But those allegations describe what the producers purportedly did, not what ECI did. All claims against ECI should be dismissed.

## ALLEGATIONS

Plaintiffs allege a conspiracy on "two reinforcing tracks": "coordinated manipulation of the Urner Barry benchmark through self-reporting and influence over ECI," and "coordinated output restriction." Dkt. 314 ¶¶ 198, 200 ("DPP Compl."). Each producer allegedly "participated in the conspiracy." *E.g.*, *id.* ¶ 47. ECI is not alleged to have participated, or even to produce or sell eggs. *See id.* ¶¶ 49–54.

ECI is instead "an online spot market" on which its members, including "farmers and egg buyers" trade eggs through a "blind bidding" process where traders do not know the identity of either party until the trade is executed. *Id.* ¶¶ 50–51, 187, 209. Its members include participants of all sizes, from all sides of the market, and accounts for "less than 5% of national shell egg transactions by volume." *Id.* ¶¶ 187, 209.

ECI is not alleged to have communicated with any producer or encouraged higher prices, and there is no allegation that ECI makes more money when prices rise. ECI is described only as "a key tool," whose "structural vulnerabilities" were designed "by its creators and managers, the nation's largest egg producers." *Id.* ¶ 54.

Plaintiffs further allege that an egg producer's CEO founded ECI in 1971 and that producers hold ECI board seats. *Id.* ¶ 209. They do not allege that any director acted for ECI in furtherance of the alleged conspiracy, or that ECI changed anything about its marketplace after the conspiracy allegedly began in 2022. *See id.* ¶ 9. In fact, ECI was established through a public process led by the USDA and state agricultural departments, to ensure that the egg markets had

"visible public trading." *See* Chuk Decl., Ex. 1, George B. Rogers, *A Review of Egg Pricing System Development*, 4, 5–6 (Staff Rep. No. AGES880111, Mar. 1988).[1]

Plaintiffs allege that Defendants coordinated "the bids *they* [(i.e., buyers and sellers)] placed on ECI," DPP Compl. ¶ 244 (emphasis added), but every communication cited is among producers, *id.* ¶¶ 245–56. Plaintiffs also allege that Urner Barry considered ECI pricing and that Urner Barry decided what weight to give ECI data. *Id.* ¶ 187.

## ARGUMENT

### I. PLAINTIFFS' CLAIMS AGAINST ECI ARE NOT PLAUSIBLE.

Plaintiffs' Complaints do not plead a plausible claim against ECI. Plaintiffs must plead facts showing "a conscious commitment to a common scheme designed to achieve an unlawful objective," *Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 768 (1984), and "that a particular defendant joined the conspiracy and knew of its scope," *Bank of America, N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). Plaintiffs plead no such facts for ECI.

The Complaints concede that ECI is a membership-based spot market that "allows participants to place bids on eggs listed for sale and see the results of trades," and that its members include both sellers and buyers of eggs—"farmers and ***egg buyers***," *i.e.*, ***Plaintiffs***. DPP Compl. ¶¶ 50–51 (emphasis added). Unlike the Producer Defendants, which allegedly sold eggs at inflated prices, *e.g.*, *id.* ¶ 48, ECI sells no eggs. Plaintiffs allege that producers allegedly told one another they were "bidding up" prices on ECI. *Id.* ¶¶ 11, 245. Even assuming that vague allegation of communication is entitled to any weight (it's not), ECI is not alleged to have been privy to those communications, or to have proposed, joined, or known of any plan.

[1] The Court may take judicial notice of this government publication. *Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998) ("Judicial notice of historical documents, documents contained in the public record, and reports of administrative bodies is proper" without converting a motion to dismiss to a motion for summary judgment.).

The Seventh Circuit affirmed dismissal of a non-seller on stronger allegations in *Amory Investments LLC v. Utrecht-America Holdings, Inc.*, a supply-reduction conspiracy case brought against chicken producers and their lender, Rabobank. 74 F.4th 525, 527 (7th Cir. 2023). There, Rabobank emailed producers that it would help "in any way possible," "including preaching the gospel to other poultry companies." *Id.* at 527. Yet the complaint did "not allege that Rabobank served as a conduit for the producers' agreement, that it helped them coordinate their production and catch cheaters, . . . or even that Rabobank knew that the producers were coordinating among themselves." *Id.* at 526–27. Even less is pleaded against ECI. It is not alleged to have said anything to anyone. *See In re Broiler Chicken Antitrust Litig.*, 702 F. Supp. 3d 635, 676 (N.D. Ill. 2023) ("Just because [a defendant] provided a convenient form to transmit the information does not mean that [it] itself joined the conspiracy.").

The allegations against ECI are simple. ECI operates a membership-based spot market serving egg sellers and buyers. DPP Compl. ¶¶ 50–51. An intermediary that simply "buy[s] and sell[s]," without any "role in setting the anticompetitive pricing or that there was any *quid pro quo* according to which [the defendant] compensated them for participating in the alleged antitrust conspiracy," has not "made a conscious commitment to participate in an illegal scheme." *Marion Healthcare, LLC v. Becton Dickinson & Co.*, 952 F.3d 832, 843 (7th Cir. 2020). And "[t]he broker who merely earns its commission . . . does not share a 'conscious commitment to a common scheme . . .'." *Marion Diagnostic Ctr., LLC v. Becton Dickinson & Co.*, 29 F.4th 337, 350 (7th Cir. 2022) (citation omitted). That describes ECI, and it should be dismissed.

## II. THE OTHER ECI-SPECIFIC ALLEGATIONS DO NOT SAVE THE CLAIM.

Plaintiffs' only other allegations as to ECI are that (1) ECI was founded by egg producers; (2) egg producers allegedly coordinated bidding on ECI; and (3) ECI's design rendered it

susceptible to collusion. DPP Compl. ¶¶ 187, 209, 244. None of these allegations make Plaintiffs' claim against ECI plausible.

***ECI's Founding and Governance:*** That producers founded ECI in 1971 and sit on its board does not make the claim plausible. In *City of Pontiac Police & Fire Retirement System v. BNP Paribas Securities Corp.*, the Second Circuit affirmed dismissal of trading platforms alleged to be "tools" of conspiring dealers that created them, owned stakes, and held board seats, rejecting those allegations as "generic" and discounting allegations that "long predate" the class period. 92 F.4th 381, 403, 409–10 (2d Cir. 2024). A founding fifty years before the alleged conspiracy and a governance structure that gives egg producers board seats are not probative of conspiracy.

***Alleged Coordinated Bidding:*** That Cal-Maine's and Hickman's bids allegedly "accounted for over half of all bids submitted" one day, DPP Compl. ¶ 245, says nothing about ECI. What matters is what ECI is alleged to have done, not what others did on its platform. *E.g.*, *In re Int. Rate Swaps Antitrust Litig.*, 261 F. Supp. 3d 430, 486 (S.D.N.Y. 2017) (allegation that dealers used Tradeweb board meetings to plot alleged conspiracy did "not implicate Tradeweb," and other allegations concerning Tradeweb did not "give rise to an inference of [Tradeweb's] participation in a conspiracy"); *see also City of Pontiac*, 92 F.4th at 407 n.12 (allegations "must separately identify how each particular defendant contributed to the alleged conspiracy").

***Alleged Structural Vulnerabilities:*** The "structural vulnerabilities" that Plaintiffs plead are, by their own account, "long-documented." DPP Compl. ¶¶ 209–10. ECI is not alleged to have changed when the alleged conspiracy began in 2022. Instead, ECI's basic design dates to its 1971 origins in a public process involving the federal government. Chuk Decl., Ex. 1 at 5–6. "A continuation of a historic pattern . . . does not plausibly allow one to infer the existence of a cartel." *Kleen Prods. LLC v. Georgia-Pacific LLC*, 910 F.3d 927, 936–37 (7th Cir. 2018); *see City of*

*Pontiac*, 92 F.4th at 403–05 (rejecting as implausible platform-formation allegations predating the class period by a decade or more).

## CONCLUSION

Plaintiffs' claims against ECI should be dismissed.

**Dated:** November 10, 2026

Respectfully submitted,

/s/ *Stephen Chuk*
Christopher E. Ondeck (*pro hac vice*)
Stephen R. Chuk (*pro hac vice*)
Jaclyn Phillips (*pro hac vice*)
Jared M. DuBosar (*pro hac vice*)
Erica Taylor Jones (*pro hac vice* forthcoming)
**PROSKAUER ROSE LLP**
1001 Pennsylvania Avenue NW,
Suite 600 South
Washington, DC 20004
(202) 416-6800
condeck@proskauer.com
schuk@proskauer.com
jphillips@proskauer.com
jdubosar@proskauer.com
ejones@proskauer.com

Rucha A. Desai (*pro hac vice*)
**PROSKAUER ROSE LLP**
11 Times Square
New York NY 10036
(212) 969-3017
rdesai@proskauer.com

Laura E. Callan, SBN 1017353
David P. Hollander, SBN 1107233
**STAFFORD ROSENBAUM LLP**
222 W. Washington Ave., Suite 900
Madison, WI 53703-2744
(608) 256-0226
LCallan@staffordlaw.com
DHollander@staffordlaw.com

*Counsel for Defendant Egg Clearinghouse, Inc.*